

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2010 MAR 31  PM 12:05

DEPUTY CLERK _____

| | | |
|---|---|---|
| DRUCKER TECHNOLOGIES INC | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:10-CV-00441-B |
| vs. | ) | |
| | ) | |
| KEN O'KELLY | ) | |
| NUTRA LAB | ) | |
| | ) | |
| Defendant. | ) | |

# MOTION TO DISMISS
## FOR LACK OF JURISDICTION OVER THE SUBJECT MATTER, IMPROPER VENUE AND OR IN THE ALTERNATE MOTION FOR A MORE DEFINITE STATEMENT
## MOTION TO STRIKE

**COMES NOW** Defendant Ken O'Kelly, Nutra Lab pursuant to Federal Rule 12 (b) 1 and Federal Rule 12 (b) 3 moves this court to Dismiss Plaintiff's Complaint due to Lack of Jurisdiction Over the Subject Matter, Improper Venue and or in the alternate pursuant to Federal Rule 12 (e) an order for a More Definite Statement in whole or in part, and or pursuant to Federal Rule 12 (f) to Strike Plaintiff's Complaint in whole or in part.  The basis for this Motion are set forth in the accompanying Memorandum.

Respectfully submitted,

_____

Ken O'Kelly
1912 W 74th St
Prairie Village, KS  66208
kokelly2010@hotmail.com
816.868.6028
913.722.7843  Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **DRUCKER TECHNOLOGIES INC** ) | |
| ) | |
| Plaintiff, ) | Civil No. 3:10-CV-00441-B |
| vs. ) | |
| ) | |
| ) | |
| **KEN O'KELLY** ) | |
| **NUTRA LAB** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS
FOR LACK OF JURISDICTION OVER THE SUBJECT MATTER,
IMPROPER VENUE AND OR IN THE ALTERNATE
MOTION FOR A MORE DEFINITE STATEMENT
MOTION TO STRIKE**

**STATEMENT OF FACTS**

1.  Plaintiffs' Complaint involves two separate issues. One is a contract issue regarding the sale of Drucker products. The other is a trademark issue regarding the sale of Defendant's product NutriMax. Plaintiff is trying to confuse this court by intertwining the two issues.

2.  Plaintiff's contract claims are not supported by any Affidavits or Exhibits. There is no Contract or Agreement relating to the manufacturing, distributing, producing, or selling of NutriMax between Plaintiff and Defendant. *Defendant's Exhibit A.*

3. Plaintiff is well aware that NutraMax is no longer available. Only twelve (12) disposable bottles were produced. *Defendant's Exhibit A.*

4. All twelve (12) disposable bottles of NutriMax have been accounted for including the one purchased by Plaintiff, Sam Dharamsi of Drucker Technologies. *Defendant's Exhibit* A.

5. The total revenue of $779.40 was generated from the sale of the twelve (12) disposable bottles of NutriMax. There was no profit achieved from the sale of the twelve bottles of NutriMax. *Defendant's Exhibit A.*

## ARGUMENT

## THE MATTER IS MOOT

6. Plaintiff's Complaint is "Moot". NutriMax is no longer produced or available for sale. *Defendant's Exhibit A.* The Jurisdiction of the Federal Courts states **"the case cannot be "moot", that is, it must present an ongoing problem for the court to resolve"**. *Defendant's Exhibit B.*

7. Plaintiff's claim of $75,000 in controversy is unreasonable. A total of twelve (12) disposable bottles of NutriMax was sold with total revenue of $779.40. There was no profit achieved from the sale of the twelve (12) bottles of NutriMax. *Defendant's Exhibit A.*

The Jurisdiction of Federal Courts states **"only cases involving more than $75,000 in potential damages may be filed in a federal court"**. *Defendant's Exhibit B.*

## POINTS AND AUTHORITIES

## MOTION TO DISMISS

8. Rule 12(b) permits the Court to terminate lawsuits that are fatally flawed in their legal premises and thus to spare the litigants the burdens of unnecessary pretrial and trial activity. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).

9. When reviewing a motion to dismiss, the Court "assume(s) all facts and inferences in favor of the nonmoving party." Libas Ltd. v. Carillo, 329 F.3d 1128, 1130 (9th Cir. 2003). In addition, where, as here, the Motion to Dismiss is based upon an alleged lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b) 1 , "the trial court may rely on affidavits and or the evidence submitted in connection with the motion." Berardinelli v. Castle & Cooke Inc., 587 F.2d 37, 39 (9th Cir. 1978).

10. "To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal. 129 S.Ct. 1937, 1949 (2009 (quoting Bell Atl. Co. v. Twombly, 500 U.S. 544, 570 (2007). While a court generally must assume the veracity of pleaded factual allegations, a complaint that "tender's naked assertions devoid of further factual enhancement" is subject to Rule 12(b) Dismissal.

## MOTION FOR A MORE DEFINITE STATEMENT

11. "Confusing Complaints impose an unfair burden on litigants and judges." McHenry v Renne. 84 F.3d 1172, 1179-80 (9th Cir, 1996). Title 16 of the Code of Federal Regulations provides, in pertinent part, that (w)here a respondent makes a reasonable showing that it cannot frame a responsive answer based on the allegations

contained in the Complaint, the respondent may move for a More Definite Statement of the charges against it before filing an answer." 16 CFR 3:11(c)

## MOTION TO STRIKE

12. Under Federal Rule of Civil Procedure 12 (f), the Court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous mater." The essential function of Rule 12 (f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy Inc. v. Fogerty, 984 F. 2d 1524, 1527 (9th Cir. 1993). A Rule 12 (f) Motion to Strike may be used to strike the prayer for relief where the damages sought are not recoverable as a matter of law.

## CONCLUSION

13. Plaintiff's Complaint contains two separate issues. One is a contract issue unsupported by Affidavits and or Exhibits. No Contract or Agreement relating to the manufacturing, distributing, producing, or selling of NutriMax has ever existed between Plaintiff Drucker Technologies and Defendant Ken O'Kelly. *Defendant's Exhibit A.*

14. The other is a trademark issue relating to the sale of NutrMax. Only twelve (12) disposable bottles were sold. NutriMax is no longer produced or available for sale.

15. Plaintiff claims to suffer damages and other losses in the State of Texas and this District. To the best of Defendant's knowledge, the only bottle of NutriMax to exist in the State of Texas is the one obtained by the Plaintiff himself.

**WHEREFORE** Defendant Ken O'Kelly, Nutra Lab, pursuant to Federal Rule 12 (b)1, and Federal Rule 12 (b) 3 respectfully request this court to Dismiss Plaintiff's Complaint For Lack of Jurisdiction Over the Subject Matter, Improper Venue or, in the alternate, pursuant to Federal Rule 12 (e) an order for a More Definite Statement of Plaintiff's Complaint in whole or in part and or pursuant to Federal Rule 12 (f) to Strike Plaintiff's Complaint in whole or in part, and for Defendant's cost of this Motion to Dismiss due to Plaintiff's counsels Failure to Conference regarding this Motion to Dismiss and for such other relief as the Court may deem just and proper.

Respectfully submitted,

_____
Ken O'Kelly
1912 W 74th St
Prairie Village, KS 66208
kokelly2010@hotmail.com
816.868.6028
913.722.7843 Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DRUCKER TECHNOLOGIES INC | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:10-CV-00441-B |
| vs. | ) | |
| | ) | |
| | ) | |
| KEN O'KELLY | ) | |
| NUTRA LAB | ) | |
| | ) | |
| Defendant. | ) | |

AFFIDAVIT OF KEN O'KELLY
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
FOR LACK OF JURISDICTION OVER THE SUBJECT MATTER,
IMPROPER VENUE AND OR IN THE ALTERNATE
MOTION FOR A MORE DEFINITE STATEMENT
MOTION TO STRIKE

STATE OF _Kansas_

COUNTY OF _Johnson_

1.  My name is Ken O'Kelly. I live in the State of Kansas.

2.  I am a named Defendant in this Complaint Civil No. 3:10-CV-00441-B

3.  I buy and sell nutritional supplements.

4.  Late last year ( 2009 ) I decided to market my own Liquid Nutritional Supplement in a disposable bottle.

5.  I named the nutritional supplement NutriMax " **Nutri**tion at its **Max** ".

**Exhibit A**

6. Twelve (12) bottles of NutriMax were produced along with twelve (12) product labels.

7. No marketing material has been printed for NutriMax.

8. On or about January 15, 2010, I was informed by Sam Dharamsi of Drucker Technologies that there was a conflict of interest with the name NutriMax.

9. Shortly after, I decided to terminate any further sales of NutriMax.

10. On or about January 30, 2010 was the last sale of NutriMax.

11. All twelve (12) bottles have been accounted for including the one purchased by Sam himself ( Sam Dharamsi of Drucker Technologies ).

12. A revenue of $779.40 was generated from the sale of the twelve (12) bottles of NutriMax.

13. There was no profit achieved from the sell of the twelve (12) bottles of NutriMax.

14. NutriMax is no longer produced or available for sale.

15. No agreement or contract relating to the manufacturing, distributing, producing, or selling of NutriMax has ever existed between Drucker Technologies and myself.

_____
Ken O'Kelly

Subscribed and sworn to before me this 29th day of March, 2010.

_____
Notary Public

My commission expires: 

Exhibit A

# Understanding THE FEDERAL COURTS

## The Jurisdiction of the Federal Courts

- The Constitution and the Federal Judiciary
- The Federal Courts and American Government
- Structure of the Federal Courts
- The Jurisdiction of the Federal Courts
- United States Judges
- The Federal Judicial Process in Brief
- Federal Judicial Administration
- Commonly Asked Questions About the Federal Judicial Process
- Common Legal Terms
- Resources

Before a federal court can hear a case, or "exercise its jurisdiction," certain conditions must be met. First, under the Constitution, federal courts exercise only "judicial" powers. This means that federal judges may interpret the law only through the resolution of actual legal disputes, referred to in Article III of the Constitution as "Cases or Controversies." A court cannot attempt to correct a problem on its own initiative, or to answer a hypothetical legal question.

Second, assuming there is an actual case or controversy, the plaintiff in a federal lawsuit also must have legal "standing" to ask the court for a decision. That means the plaintiff must have been aggrieved, or legally harmed in some way, by the defendant.

Third, the case must present a category of dispute that the law in question was designed to address, and it must be a complaint that the court has the power to remedy. In other words, the court must be authorized, under the Constitution or a federal law, to hear the case and grant appropriate relief to the plaintiff. Finally, the case cannot be "moot," that is, it must present an ongoing problem for the court to resolve. The federal courts, thus, are courts of "limited" jurisdiction because they may only decide certain types of cases as provided by Congress or as identified in the Constitution.

Although the details of the complex web of federal jurisdiction that Congress has given the federal courts is beyond the scope of this brief guide, it is important to understand that there are two main sources of the cases coming before the federal courts: "federal question" jurisdiction, and "diversity" jurisdiction.

In general, federal courts may decide cases that involve the United States government, the United States Constitution or federal laws, or controversies between states or between the United States and foreign governments. A case that raises such a "federal question" may be filed in federal court. Examples of such cases might include a claim by an individual for entitlement to money under a federal government program such as Social Security, a claim by the government that someone has violated federal laws, or a challenge to actions taken by a federal agency.

A case also may be filed in federal court based on the "diversity of citizenship" of the litigants, such as between citizens of different states, or between United States citizens and those of another country. To ensure fairness to the out-of-state litigant, the Constitution provides that such cases may be heard in a federal court. An important limit to diversity jurisdiction is that only cases involving more than $75,000 in potential damages may be filed in a federal court. Claims below that amount may only be pursued in state court. Moreover, any diversity jurisdiction case regardless of the amount of money involved may be brought in a state court rather than a federal court.



CLICK TO ENLARGE THIS MAP

GEOGRAPHIC BOUNDARIES OF UNITED STATES COURTS OF APPEALS AND DISTRICT COURTS

A COURT CANNOT ATTEMPT TO CORRECT A PROBLEM ON ITS OWN INITIATIVE, OR TO ANSWER A HYPOTHETICAL LEGAL QUESTION.

Exhibit B

Federal courts also have jurisdiction over all bankruptcy matters, which Congress has determined should be addressed in federal courts rather than the state courts. Through the bankruptcy process, individuals or businesses that can no longer pay their creditors may either seek a court-supervised liquidation of their assets, or they may reorganize their financial affairs and work out a plan to pay off their debts.

Although federal courts are located in every state, they are not the only forum available to potential litigants. In fact, the great majority of legal disputes in American courts are addressed in the separate state court systems. For example, state courts have jurisdiction over virtually all divorce and child custody matters, probate and inheritance issues, real estate questions, and juvenile matters, and they handle most criminal cases, contract disputes, traffic violations, and personal injury cases. In addition, certain categories of legal disputes may be resolved in special courts or entities that are part of the federal executive or legislative branches, and by state and federal administrative agencies.

**PREVIOUS**                                   **NEXT**

DOWNLOAD A PDF VERSION

**Exhibit B**