IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DRUCKER TECHNOLOGIES, INC., § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> KENNETH O'KELLY, an individual § <br> § <br> And § <br> § <br> NUTRA LAB, a business entity, § <br> § <br> Defendants. § | CIVIL ACTION NO. 10-CV-441 |

**DRUCKER'S REPORT OF FED. R. CIV. P. 26(f)(2) CONFERENCE
IN LIEU OF JOINT REPORT**

Plaintiff Drucker Technologies, Inc. ("Drucker"), through its attorneys, pursuant to the Rules 16(b), 26(f)(1) and 26(f)(2) of the Federal Rules of Civil Procedure, files this report of the Fed. R. Civ. P. 26(f)(2) Conference with Defendant, commenced by exchange of emails on August 3, 2010, continued telephonically August 4, 7 and 9 and completed telephonically on August 10, 2010.  Theodore F. Shiells, counsel for Drucker, participated by telephone for Drucker:  *Pro se* Defendant Kenneth O'Kelly participated for Defendants.

**REASON FOR FAILURE TO FILE AS JOINT REPORT**

Counsel for Drucker attempted in good faith to negotiate with *pro se* Defendant Mr. O'Kelly in an effort to reach agreement on the contents of the Joint Report, over several days.  During the August 4, 2010 telephone call, and during various other subsequent telephone calls, the undersigned also attempted to discuss the items in Sections 2-16 of the Status Report Order dated July 26, 2010 (Doc. 15) and presented Mr.

O'Kelly with Drucker's proposals for the content of the Joint Report.  Also, on June 2, 2010, on August 4, 2010 and at various times thereafter, the undersigned had extensive settlement discussions with Mr. O'Kelly by telephone, as discussed in Section 14 below, though agreement could not be reached.

Following the August 4, 2010 telephone conference with Mr. O'Kelly on the content of the Joint Report, on August 4, 2010, the undersigned prepared and provided Mr. O'Kelly a draft of the Joint Report, with Drucker's contentions in Section 1 and its proposals for the content of Sections 2-16, including proposed dates etc., leaving places for Defendants to provide their input, so that the dates or other aspects of management of case could be negotiated and, hopefully, agreed upon.  However, instead of providing Defendants' input, Mr. O'Kelly objected to Drucker's contentions in Section 1, stating that they were not "correct," that they were not "brief" enough, in his view, and that, he (Mr. O'Kelly) would "lose all credibility" if Drucker's contentions in the Joint Report were retained.  Mr. O'Kelly then insisted, as a condition of further discussions regarding Sections 2-16, that Drucker change its contentions in Section 1 to Mr. O'Kelly's satisfaction and/or permit Mr. O'Kelly to state Defendants' contention (which Mr. O'Kelly refused to provide) first.  The undersigned advised Mr. O'Kelly that Drucker was entitled to state its contentions as it saw fit; that Defendants had the same right and that Drucker would not revise Drucker's contentions to suit Mr. O'Kelly.  Nevertheless, on August 7 and 9, 2010, the undersigned Counsel for Drucker still attempted to go over each of Sections 1-16 with Mr. O'Kelly by telephone, one by one.  Mr. O'Kelly refused to provide the undersigned with Defendants' contentions for Section 1, refused to provide any input regarding the matters in Sections 2-16, except for very limited input as

indicated below, and repeatedly restated his refusal to discuss anything further in the Joint Report until Drucker changed its contentions in Section 1.

On August 10, 2010, the undersigned telephoned Mr. O'Kelly at approximately 1:00 pm and 2:00 pm and again asked him again to provide input. In the 1:00 pm telephone call, Mr. O'Kelly stated that the reason he would not provide input was that "he did not trust [counsel for Drucker] and believed that [counsel for Drucker] would change what he wrote before filing it." In the 2:00 pm telephone call, Mr. O'Kelly stated that "no trial was necessary" and "no discovery was necessary" but that he would provide input. Mr. O'Kelly was advised that, if he did not provide input by 5:00 pm, that the undersigned would need to file the Report without his input. At 4:15 pm, Mr. O'Kelly was reminded of the deadline. However, Mr. O'Kelly has failed to provide any input.

Because of Mr. O'Kelly's refusal to provide input on behalf of Defendants, it was not possible to file this Report as a "Joint" Report. However, where Mr. O'Kelly did state a position of the Defendants in one or more of the several discussions with Mr. O'Kelly, that position is included below.

**1. A brief statement of the nature of the case, including the contentions of the parties.**

This is an action for trademark infringement and unfair competition, under United States and Texas State statutes and common law, based upon the actions of Defendant Kenneth O'Kelly ("O'Kelly"), who was a former distributor for Plaintiff Drucker, and by O'Kelly's company, Defendant Nutra Lab, following termination of O'Kelly as a distributor for Drucker. The contentions of the respective parties are as follows:

### a. **Contentions of Plaintiff Drucker**:

Drucker manufactures and markets a line of nutritional supplement products. In order to ensure that the consumer receives consistent quality and uses the products properly, as well as to assure the integrity of Drucker's sales channel, Drucker sells its nutritional products to heath-care professionals ("HCP's") who meet certain criteria, upon their acceptance of the terms of an "Independent Distributors Agreement" (the "Agreement").

Drucker's nutritional supplement products are sold to HCP's for retail sales to their patients because they sell the Drucker products along with providing services that ensure proper use of Drucker's nutritional supplement products, such as advising a patient which products are best for their needs, which protocols to follow, ensuring that the patient knows and adheres to dosages, regular follow up on the patient's results of using the product, and related services. The services provided by HCPs are necessary to maintain Drucker's reputation for manufacturing and selling high quality products.

When HCPs accept the Agreement, they agree that their sole purpose for engaging in activity with Drucker is to provide health and nutrition products to their patients and that they are not permitted to resell Drucker products to or through retail or internet distribution channels, unless pre-approved by Drucker. HCPs further agree to use only Drucker approved marketing materials in promoting Drucker products and that they may not use Drucker's name, logo or trademarks on the Internet or in any other advertising medium, without prior written authorization and permission of Drucker. HCPs also agree that the Drucker products are purchased at wholesale prices from Drucker and that they are priced and sold for direct sale to the patients of their respective

practice only, and that any other use or promotion of Drucker products is expressly prohibited.

On approximately June 24, 2007, Defendant O'Kelly entered into the Agreement with Drucker to distribute Drucker products by indicating his acceptance of the terms of the Agreement in an on-line application over the Internet. O'Kelly indicated that his clinic was called "Pet Lab."

Drucker permits a limited number of HCP's to sell over the Internet, with prior approval from Drucker. However, Drucker never authorized Defendants to sell over the Internet.

After becoming an independent distributor for Drucker, however, O'Kelly did not comply with the terms of the Agreement. On July 14, 2009, O'Kelly was terminated as an HCP distributor. On July 14, 2009, Drucker sent O'Kelly an email instructing him to "remove [Drucker's] products from any future promotions, catalogs and electronic media immediately" and offering to buy back and unsold Drucker products in O'Kelly's possession. O'Kelly never complied with the instructions of the email of July 14, 2009.

Notwithstanding termination of the Agreement and the instructions of the email of July 14, 2009, Defendants are promoting, advertising and selling Drucker nutritional supplement products over the Internet (for which Defendants were never authorized) to customers who are not patients of Defendants, in a manner that would lead a consumer to believe that Defendants are authorized resellers of Drucker's products when they are not. Those actsby Defendants constitute trademark infringement and unfair competition.

The Drucker products at issue include Drucker's "intraMAX" liquid nutritional supplement product, for which Drucker owns United States Trademark Registration No.

3,239,601 for "intraMAX" for the goods "nutritional products" Drucker's "intraMAX" product is sold in round, white plastic bottles having a distinctive label design having a rectangular main area having rounded corners, bearing the "intraMAX" trademark, with the prefix "intra" in small letters and the term "MAX" in larger, thicker, all capital letters. The main area also bears the term "ALL-IN-ONE dietary supplement," along with information on some of the main ingredients, surrounded by a dark-colored framing with wide bands at the top and bottom.  The Drucker "intraMAX" label further has detailed information listing the ingredients in several separate areas on the sides and back of the label, terms "matrices," each being separated by the same dark-colored framing.  This label design has become distinctive to Drucker and is recognized by customers as indicating nutritional products emanating from a single source, Drucker, even without the "intraMAX" trademark, thus constituting protectable trade dress.

Defendants O'Kelly and Nutra Lab have sold and may still be selling nutritional supplement products under the designation "nutriMAX."  Defendants' use of the "nutriMAX" designation is confusingly similar to Drucker's registered trademark "intraMAX" considering the respective marks as a whole on the respective goods.  The respective goods, dietary supplements, are identical.  The sound of "intra" and "nutri" is similar.  Both share prominent use of the term "MAX" at the end, printed in all capital letters.  Both share a two-syllable first term, printed in all small case letters.  Both share the incongruity of having an all-small-letter first term and an all-capital-letter second term.  Accordingly, Defendants' use of "nutriMAX" constitutes an infringement of Drucker's rights in its registered trademark, "intraMAX."

Defendants' nutriMAX" label is also confusingly similar to the distinctive trade dress of the "intraMAX" product bottle and label. Like the "intraMAX" product trade dress, the "nutriMAX" product is sold in round, white plastic bottles having a label design having a rectangular main area having rounded corners. The "nutriMAX" product label bears the "nutriMAX" designation in the same respective position as on the "intraMAX" label. The "nutriMAX" designation prints the term "MAX" in larger, thicker, all capital letters, as with the "intraMAX" label. The main area of the "nutriMAX" label also bears the term "ALL-IN-ONE dietary supplement," along with information on some of the main ingredients, surrounded by a dark-colored framing with wide bands at the top and bottom. The "nutriMAX" label further has detailed information listing the ingredients in several separate matrices on the sides and back of the label, each being separated by the same dark-colored framing. The foregoing similarities are such as to create a likelihood of confusion between the "nutriMAX" trade dress and Drucker's distinctive trade dress and falsely creates the impression that there exists a common source, affiliation and/or sponsorship of the associated business and services of Defendants with those of Drucker.

Furthermore, Defendants are increasing the likelihood of confusion by marketing their "nutriMAX" product in advertisements on the Internet side-by-side with Drucker's "intraMAX" products. Furthermore, Defendants are instructing the consumer to "alternate weekly IntraMax / NutriMax to provide ultimate nutritional requirements," which falsely suggests that Nutra Lab is affiliated with Drucker and/or that Drucker has otherwise endorsed the suggested alternating use of Nutra Lab "nutriMAX" product as a complement to use of Drucker's genuine "intraMAX" product. Still further, Defendants

7

have wrongfully identified themselves as "enutrition.intramax" in Ebay Internet advertisements for "nutriMAX," using Drucker's registered trademark "intraMAX," further falsely suggesting that there is a common source for "nutriMAX" and "intraMAX" products and/or otherwise falsely suggesting that there exists an association between the respective sources of "nutriMAX" and "intraMAX" and that Defendants are authorized dealers of "intraMAX."

The Defendants advertise their "nutriMAX" product as being "Manufactured & Labeled in Accordance with FDA Guidelines," but this representation is false. For example, Food and Drug Administration regulation 21 C.F.R. § 101.5 regarding food product labeling, which requires all food products to bear the name and address of the manufacturer, packer or distributor. In violation of 21 C.F.R. § 101.5, the "nutriMAX" product label includes only the following information to identify the manufacturer or distributor of the product: "Nutra Lab: 816.868.6028." Upon information and belief, the number "816.868.6028" is an unlisted cellular telephone number in the general area of Kansas City, Missouri. Accordingly, the "nutriMAX" label violates Food and Drug Administration regulation 21 C.F.R. § 101.5, as well as being a false representation of fact, in violation of Lanham Act, 15 U.S.C. § 1125(a).

For the foregoing reasons, Defendants' use of the designation "nutriMAX" constitutes infringement, unfair competition, and false advertising of the rights of Drucker in its "intraMAX" mark, under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(c), as well as Texas States statutes, including but not limited to Tex. Bus. & Com. Code § 16.29., and the common law.

### b.     Contentions of Defendants O'Kelly and Nutra Lab:

[DEFENDANTS REFUSED TO SUPPLY]

**2. Any challenge to jurisdiction or venue, including any procedural defects in the removal, if this case was removed.**

Defendants have challenged the propriety of subject matter jurisdiction, personal jurisdiction and venue.  This case was not removed.

**3. Any pending motions.**

Defendants have filed a "Motion to Dismiss for Lack of Jurisdiction over the Subject Matter, Improper Venue and or in the Alternate Motion for a More Definite Statement and Motion to Strike," (Doc. 5), filed March 31, 2010, and a "Motion to Strike Plaintiff's Response and Brief in Opposition [to Doc. 5] and Defendants' Motion to Strike Plaintiff's Cross Motion for Leave to Take Discovery Relating to Jurisdiction and Venue," (Doc. 12), filed June 1, 2010.  Drucker has filed responses to these motions.  These motions are pending.

**4. Any matters which require a conference with the court.**

Plaintiff does not believe there are matters requiring a conference with the Court.

Mr. O'Kelly stated that Defendants will request a conference with the Court, but would not provide the subject matter of the conference. .

**5. Likelihood that other parties will be joined or the pleadings amended.**

Drucker believes that it is unlikely that other parties will be joined.  However, if it is determined during discovery that Defendants are employing shell corporations, for example, to perform the accused acts, additional parties may be joined.

Depending upon discovery obtained, it is possible that the Drucker's pleading may be amended.  Defendants have not yet answered the Complaint.

Mr. O'Kelly stated that he believes that Amazon.com may be added as a party since one of the advertisements that is the subject of complaint appeared on amazon.com.

**6. (a) An estimate of the time needed for discovery, with reasons, (b) a specification of the subjects on which discovery may be needed, and (c) whether discovery should be conducted in phases or be limited to or focused upon particular issues.**

<u>**Note:  The following are Drucker's estimates.  Mr. O'Kelly stated that "no discovery will be necessary.**</u>"

An estimate of the time needed for discovery, with reasons:  <u>Approximately 14 months from the present</u>, *i.e.*, <u>until September 12, 2010.</u>

Drucker believes that this amount of time will permit drafting appropriate discovery, obtaining responses in due course and scheduling and taking deposition, unless problems arise during discovery.  Drucker anticipates that some delays and/or misunderstandings may arise in view of the *pro se* status of Defendants.

    (a)  A specification of the subjects on which discovery may be needed:

<u>All subjects raised by the Complaint</u>.

    (b)  Whether discovery should be conducted in phases or be limited to or focused upon particular issues.

Drucker does not believe that discovery should be conducted in phase or otherwise limited.

Mr. O'Kelly on one occasion stated that he believed that discovery should be conducted in phases, and on another occasion stated that "no discovery will be necessary."

**7. Any issues related to disclosure or discovery of electronically stored information, including the form or forms (i.e., TIF, PDF, or native; with or without metadata; searchable or not) in which it should be produced.**

Drucker does not contemplate any special issues. It is proposed that electronic discovery be produced on paper or in its native electronic form, at the option of the producer. Provided, however, that the opposing party shall have the right to seek alteration of the method of production for good cause.

Mr. O'Kelly did not appear to object to the foregoing statement.

**8. Any issues relating to claims of privilege or of protection as trial-preparation material, including–if the parties agree on a procedure to assert such claims after production–whether they will be asking the Court to include their agreement in an order.**

At this time, Drucker is unaware of any special issues regarding assertion of claims of privilege or of protection as trial-preparation material requiring deviation from the Federal Rules or local rules.

Mr. O'Kelly did not present any issues regarding the foregoing and is unlikely to have any, in view of Defendants' *pro se* status.

**9. What changes, if any, should be made in the limitations on discovery imposed under the Federal rules or by local rule, and what other limitations should be imposed.**

Drucker does not propose any changes to the Federal Rules or local rules.

It is not known whether Defendants will propose any changes.

**10. Any other orders that should be entered by the Court under Rule 26(c) or Rule 16(b) and (c).**

Drucker contemplates that a protective order regarding confidential information will be required.

It is not known what, if any, orders under Rule 26(c) Defendants believe should be entered.

**11. Proposed deadlines with specific dates that limit the time to (a) join other parties and to amend the pleadings; (b) file motions, including summary judgment and other dispositive motions; (c) complete discovery; and (d) designate expert witnesses and make the expert disclosures required by Rule 26(a)(2).**

>   **Note:  The following dates were proposed by Drucker.  Defendants refused to provide any input:**

>   (a)     Join other parties and to amend the pleadings:     May 12, 2011.

>   (b)     File motions, including summary judgment and other dispositive motions:     February 12, 2011.

>   (c)     Complete discovery:  September 12, 2011.

>   (d)     Designate expert witnesses and make the expert disclosures required by Rule 26(a)(2).

>           Party having the burden of proof:     June 12, 2011.

>           Responsive reports:     July 12, 2011.

**12. Requested trial date, estimated length of trial, and whether jury has been demanded.**

>   **Note:  The following dates were proposed by Drucker.  Defendants refused to provide any input regarding proposed dates, other than as indicated below.**

>   (a)     Drucker's requested trial date:  January 5, 2012.

>   (b)     Drucker's estimated length of trial:  Two (2) days.

>           Defendants' estimated length of trial:  "One half day."

>   (c)     Jury trial demanded.  Yes (by Plaintiff).

**13. Whether the parties will consent to trial (jury or non-jury) before a United States Magistrate Judge per 28 U.S.C. § 636(c).**

>   The parties do not consent at this time.

**14. Progress made toward settlement, and the present status of settlement negotiations.  This must be a detailed report. Do not submit a generic recitation that settlement was discussed but was unsuccessful.**

Counsel for Drucker and Kenneth O'Kelly for Defendants engaged in extensive settlement discussions on or about June 2, 2010, on August 5, 2010 and at various other times.

The parties have also engaged in direct settlement discussions soon after June 2, 2010. Those discussions were between Kenneth O'Kelly for Defendants and Sam Dharamsi for Drucker. The undersigned counsel for Drucker was not present during those discussions.

In the settlement discussions in which the undersigned counsel for Drucker was present, Mr. O'Kelly asserted that Defendants have discontinued sales of the "nutriMAX" nutritional supplements products bearing the labels accused of infringement after selling only twelve (12) bottles. However, based upon information received by Drucker, the undersigned pointed out that there is inconsistency regarding the representations of Defendants about the total number of sales, which raises questions about whether such sales have, in fact, been discontinued. Mr. O'Kelly disputed that there is any inconsistency.

It is also Drucker's position that there is inconsistency between Defendants' representations on discontinuance of continued sales by Defendants of Drucker's "intraMAX" products following termination of Defendants' distributorship agreement, as well as inconsistency regarding Defendants' discontinuance of other prohibited activity that is the subject of the Complaint. Defendants dispute that there is any inconsistency in these items.

Mr. O'Kelly made a settlement proposal to the effect that Defendants be re-activated as distributors of Drucker's product and that Defendants perform certain

advertising services for Drucker. This proposal was not acceptable to Drucker and has been rejected. Drucker is insistent upon an accurate accounting for past sales and other activity that is the subject of the Complaint, a full discontinuance of the activity by Defendants that is the subject of the Complaint, an agreed injunction against resumption of the activity and monetary compensation. Agreement has not been reached.

In Drucker's view, although meaningful progress was made toward settlement during settlement discussions and that there are reasonable prospects for future settlement, a mediation will be necessary to achieve a settlement.

It is not known what Defendants' views are regarding whether meaningful progress was made toward settlement or whether there are reasonable prospects for future settlement.

**15. What form of alternative dispute resolution (*e.g.*, mediation, arbitration, summary jury trial, court-supervised settlement conference, or early neutral evaluation) would be most appropriate for resolving this case and *when* it would be most effective.**

Drucker submits that early mediation would be most effective.

Defendants' position is __[DEFENDANTS REFUSED TO SUPPLY]_____..

**16. Any other matters relevant to the status and disposition of this case.**

Drucker does not have other matters to present.

Defendants' position is __**[DEFENDANTS REFUSED TO**

**SUPPLY]**_____..

Date:  August 10, 2010              By:     /s/ Theodore F. Shiells_____
                                    Theodore F. Shiells
                                    Texas State Bar No. 00796087
                                    CARR LLP
                                    670 Founders Square
                                    900 Jackson Street
                                    Dallas, Texas 75202
                                    Tel: (214)760-3000
                                    *Fax: (214) 760-3003
                                    Attorneys for Plaintiff

Date:  August 10, 2010              By:     __FAILED TO PROVIDE_____
                                    Kenneth O'Kelly, *pro se*
                                    On behalf of self and Defendant
                                    Nutra Lab
                                    Tel: (214)760-3000
                                    Fax: (214) 760-3003
                                    Attorneys for Plaintiff

15

## **CERTIFICATE OF SERVICE**

      I hereby certify that one (1) true copy of the foregoing document has been served upon Defendants, *pro se*, by means of electronic service, pursuant to the Court's ECF system.

Date:   August 10, 2010                                      /s/Theodore F. Shiells \_\_\_\_
                                                                       Theodore F. Shiells